### GITTLESON et al. v. ROBINSON et al.
### No. 682.

Municipal Court of Appeals for the District of Columbia.

Oct. 12, 1948.

Joseph H. Schneider, of Washington, D. C. (Ben Lindas, of Washington, D. C., on the brief), for appellants.

Franklyn Yasmer, of Washington, D. C., for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellees sued for damages for personal injuries sustained by one of them, Joan Robinson, a minor, when she fell through trap doors located in a sidewalk in front of premises at 2240 Virginia Avenue, Northwest, owned by Mr. and Mrs. Frank Gittleson, and consisting in part of a store occupied by a tenant, Clarence Tate, the other appellant. A jury awarded Joan Robinson $500 for her pain and suffering and also awarded $2 for hospital expenses to her mother, Erma Boyd, the other appellee. Mr. Gittleson having died, judgment was entered only against Mrs. Gittleson and Mr. Tate. They prosecute this appeal.

The evidence, considered in the light most favorable to appellees, showed that the trap doors were located in the sidewalk immediately adjoining the building, which fronted on Virginia Avenue, and that such trap doors, built of wood with metal covering, were over an opening leading into the basement of the premises. Joan Robinson, who was then about 12 years old, was walking on the sidewalk carrying a one-year-old infant in her arms when she met a playmate who playfully attempted to take the baby from her. Joan stepped backwards on to the trap doors, the doors gave way, and she fell into the opening. The baby dropped by Joan in falling, also fell into the opening but was caught by Joan. A part of the trap doors also fell in but did not strike Joan or the baby. Joan's leg was cut and bleeding, and a piece of flesh was hanging from the wound. As a result of the injury Joan was treated on four occasions at a hospital. Joan and her mother and father each testified that the trap doors were rotten. Joan's playmate, who had also fallen into the hole but was not injured, did not testify, but it was stipulated her testimony would be the same as Joan's.

The statement of proceedings and evidence recites that it was announced at the beginning of the trial that "Isadore Gittleson would appear on behalf of his mother, Eva Gittleson," who was not present and therefore did not testify. No witnesses were called in behalf of appellants, but appellants Clarence Tate and Isadore Gittleson, who appeared under the conditions recited above, were called as witnesses by appellees and testified that the trap doors were not in a rotten condition, that no complaint had been made about them to either of appellants, that in the space under the trap doors the ground slopes from one foot at the entrance to about three or four feet at the bottom, and that appellants had no knowledge as to how the accident had happened.

One of the contentions made by appellants is that since no statement was made that Clarence Tate and Isadore Gittleson were being called as hostile witnesses appellees were bound by their testimony, and that under the whole evidence, including such testimony, no negligence by defendants had been shown, and hence that a verdict should have been directed in their behalf.

■ The contention is without substance. The only essential conflict in the testimony was as to the rottenness of the doors. Even if appellees were bound by the testimony of the adverse parties (a point upon which we deem it unnecessary to pass in this case),[1] there was ample evidence, consisting of photographs of the trap doors, both opened and closed, together with the testimony of the injured child, that the doors were in a dilapidated condition, which if true should have been known to appellants. The doors were double ones, constructed for hinging on both sides and opening in the middle, but the photographs show that hinges remained on only one side, leaving the other side unattached and loose, and that the remaining hinges were

---

[1] Municipal Court rule 39(a), which in this respect is the same as rule 43(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that "A party may call an adverse party * * * and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief."

attached in part at least by bent nails instead of by screws.

 Appellants contend next that the trial court erred in instructing the jury that appellants owed a duty to exercise due care in the maintenance of the entrance from the sidewalk to the excavation under it. This contention is based upon the position of appellants that the trap doors were wholly on private parking rather than on a public throughfare. It was not questioned, however, that the trap doors were in the sidewalk adjoining the building. The rule in the District of Columbia is that the sidewalks of the District of Columbia extend from the curb bounding the street to the building line, and that it is the duty not only of the District of Columbia but of the owner of the property for whose convenience and use trap doors are placed in the sidewalk to keep them in a safe condition.[2]

 It is likewise the rule that where a tenant has use or possession of structures in or under a sidewalk with the obligation of maintenance and repair and permits such structures or devices to become out of repair, as the result of which another is injured, the tenant is liable to the injured party.[3]

 There may be circumstances under which only the landlord of property is liable for an accident such as this, and there may be other circumstances under which only the tenant is liable, but here the landlord and tenant have not sought to make any such distinction and, in fact, they have been represented throughout by the same counsel. Furthermore, it was stipulated that Mr. and Mrs. Gittleson were owners of the entire corner property, which fronted both on Virginia Avenue and 23rd Street, that appellant Tate was the tenant of and conducted a store in front of which the trap doors were located, and that the trap doors led to the basement of the "premises". Under the circumstances, the jury was clearly entitled to believe that the trap doors were under the control both of the landlord and of the tenant, and hence that both were liable.

 The final assignment of error by appellants was that the trial court erred in refusing to sustain "the contention of the defendants that the evidence conclusively showed that if any damage was suffered by plaintiffs it was due entirely to the negligence of the plaintiffs." In other words, appellants now claim that the child was guilty of contributory negligence. The difficulty with this contention is that the answer filed by appellants did not allege contributory negligence; neither does the record show that they requested the trial court to instruct the jury on this subject, although at the conclusion of its charge to the jury the trial court asked both counsel whether there were any further suggestions for instructions and each replied in the negative. Contributory negligence is, of course, an affirmative defense and, as such, must be pleaded and proved by defendant.[4] Under these circumstances the assignment of error on this point comes too late.[5]

Affirmed.

---

[2] Way v. Eidimis, 66 App.D.C. 92, 85 F.2d 258.

[3] Salt Lake City v. Schubach, 108 Utah 266, 159 P.2d 149, 160 A.L.R. 809; Hamelin v. Foulkes, 105 Cal.App. 458, 287 P. 526.

[4] Municipal Court rule 8(c).

[5] Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037; Columbia Aid Ass'n v. Sprague, 50 App.D.C. 307, 271 F. 381; Bedrosian v. Wong Kok Chung, D.C.Mun.App., 33 A.2d 811; cf. Schaff v. R. W. Claxton, Inc., 79 U.S.App.D.C. 207, 144 F.2d 532.